LAND, J.
Plaintiff appeals from a judgment sustaining an exception of no cause of action filed by the National Surety Company.
*515 The facts as shown by the allegations of the petition and the documents thereto annexed are substantially as follows:
In 1902 the plaintiff entered into three separate contracts with Dowdle & Windette for the construction of certain levees, styled “Gulf Coast Levees 1, 2, and 3.” The National Surety Company became surety on the contractors’ bond in the sum of $10,000 for the faithful performance of each contract. The three contracts and the three bonds contained the same stipulations and conditions, which, as far as necessary to state, were in substance, as follows:
The work was to be commenced on or before December 1; 1902, and completed before June 1, 1904. The work was to be done under the direction of the state engineer in charge. As the work progressed, monthly estimates were to be made and certificates issued to the contractors by said engineer, and 80 per cent, of the amounts called for by the certificates were to be paid in cash, and 20 per cent, on the completion of the work. The three contracts were (on May 11, 1904) amended an'd modified, with the consent of the surety company, and the term for the completion of the work extended to May 31, 1905. On January 3, 1905, the situation was as follows:
In section 1, only 257,000 cubic yards of earth out of 471,049 required for the completion of this section had been placed in position, and the contractors had received payment for the work done as provided by the contract. In section 2 only 29,000 cubic yards, out of a total of 420,779, had been placed in position by the contractors. In section 3 no work had been done by the contractors. From the report of date January 3, 1905, made by the state engineer in charge to the board of commissioners, it appears that between November 5, 1904, and January 3,1905, the only work done by the contractors was dredging to the amount of 10,000 or 12,-000 cubic yards of earth, and that the small amount of work done was due to the use of a defective dredge by the contractors. The said report concludes as follows:
“In this section, at the rate at which material is now being handled, an indefinite long period must elapse before the earth work can possibly be placed in position, without considering the time to be consumed in the dressing and grassing of the embankment. Under such conditions, in my judgment, all further estimates and sums unpaid to the contractor should be withheld, as provided for in section 9 of the contract. As you .are aware of, no work at all has been accomplished in section No. 3.”
On January 4, 1905, the board of commissioners, considering the report and recommendation of the state engineer in charge, adopted a resolution suspending further payments to the contractors, and requiring them to notify the board at once what provisions they proposed to make by additional dredges or other means to comply with their contracts as they should. On receiving notice of the passage of their resolution, the contractors abandoned further prosecution of the work, and instituted suit in the United States Circuit Court against the board for the dissolution of said three contracts. The board subsequently let out the completion of the work to the lowest bidder at a price exceeding the contract price by $28,725.78.
Plaintiff sued the contractors for said sum, and the surety company for the sum of $26,-925.08.
Section 9 of the original contracts reads as follows:
“Should the contractor fail to prosecute the work under this contract with the vigor necessary to its completion within the time stipulated, in the opinion of the engineer in charge, all estimates may be withheld; and it shall be competent for and the duty of the president of the board to employ such additional force as he may deem necessary at the expense of the contractors. Should it become necessary, in the judgment of the president of the board, to suspend this contract, or to declare it vacated or annulled, for negligence, inefficiency, or abandonment by contractor, he may proceed to do so, and in such a case the 20 per cent, reserved as security for completion of contract, and all other sums paid to said contractor by the Plaquemines Parish East Bank Levee District, shall be forfeited, the decision of the board of *517 commissioners to be final as to the cause of' action on the part of the president or engineer in charge. Should damage accrue to the district, or to those to be protected by the levee, from such laches, or from abandonment of the work, the contractor and his sureties shall be responsible for such amount as shall be awarded by the courts. A contract, vacated or annulled as above described, may be relet by the president of the board to another contractor without advertisement or another formality.”
In May, 1904, the three levee contracts of date October 16, 1902, were amended as follows :
“Dowdle & Windette shall be given an extension of time in which to complete the construction of said levee, which extension of time shall be to May 31, 1905, provided that the said board obligates itself to grant a further extension of time to said Dowdle & Windette, if same be desired by them, provided the said Dowdle & Windette make arrangements with the said board, and to the satisfaction of the board, concerning the payment of such taxes as may be owed for the year 1905, by parties in that portion of the district where the levee shall not be in process of construction or completed.”
“The Board * * * agree to pay to Dowdle & Windette the twenty per cent, heretofore retained on all previous estimates, less the sum of twenty-five hundred dollars, to be retained aá hereinafter provided, and the said board further agrees to pay Dowdle & Windette the full one hundred per cent, of all further work, payable each month; but said payments shall not be construed as a final acceptance or evidence of the completion of said work.”
“The said Dowdle & Windette agree that said sum of twenty-five hundred dollars retained out of the twenty per cent, of their past estimates, shall be retained by the board * * * to be used according to its discretion; it being the intention of said board to use said funds in adjusting the taxes in that portion of the district below the lower line of the Bohemia plantation, where the levee shall not be in process of construction.
“In the event the said levee shall not have been completed by May 31, 1905, the said Dowdle & Windette agree to arrange with the board the matter of securing a further extension of time as hereinbefore provided, provided that they will use every effort to complete the construction of said levee at the earliest date possible.”
The judge a quo held that section 9 of the original contracts was virtually abrogated by the amendments of May 11, 1904. We are not able to concur in that conclusion.
In the amendments there is no reference to section 9 or to any of its stipulations. The extension of time to May 31, 1905, was not inconsistent with the right of the board under said section to withhold estimates in case the contractor failed to prosecute the work with the vigor necessary to its completion within the time stipulated. The amendments did not affect the obligation of the contractors to complete the work as soon as practicable. The stipulation as to a further extension was subject to the proviso that the contractors “will use every effort possible to complete the construction of said levee at the earliest date possible.” The agreement recites that, up to May 11, 1904, the contractors “had made every reasonable effort” to complete the original contracts. The amendments necessarily imply the obligation of the contractors to use every possible effort to complete the levee at the earliest (late possible. Under section 9 of the original contracts the obligation of the contractors was to prosecute the work with the vigor necessary to its completion within the time stipulated. There is no practical difference between such an obligation and one to use “every effort,” or “every possible effort,” to complete the work as soon as practicable. Section 9 was covenanted in order to coerce due diligence in the prosecution of the work, so as to insure its completion within the time specified. Under the contracts as amended the contractors undertook to complete the work on or before May 31, 1905. The stipulation as to a further extension was intended to provide for the contingency of a failure to complete the levee after the use of every possible or reasonable effort on the part of the contractors to do so. The contractors having failed to exercise the diligence in the prosecution of work required by the contract as amended, their contingent right to a further extension expired. The case stands, therefore, as if no stipulation for a further extension had been made, and comes clearly *519 within the letter and spirit of section 9 of the original contracts. That section was intended to give the board a remedy for unnecessary delay in the prosecution of the work, which it would not have had under the general laws of the state relative to conventional obligations. The conventional remedy provided in section 9 was stipulated for the purpose of insuring the speedy construction of public levees designed for the protection of the lands of the levee district from overflow. It is not reasonable to suppose that the board had the slightest intention of waiving this remedy, so necessary to insure the speedy construction of the levee work covered by the contracts. We may say, in conclusion, that the board acted in the most liberal spirit in dealing with the contractors, who had defaulted on the original contracts. Instead of resorting to the drastic remedies provided in section 9, the board gave the contractors an extension of time, and waived its contract right to retain 20 per cent, of the estimates.
It is therefore ordered that the judgment below be reversed, and it is now ordered that the exception of no cause of action filed by the defendant surety' company -be overruled, and that this cause be remanded for further proceedings according to law; said defendant to pay all costs below occasioned by said exception and the costs of this appeal.